J-A02020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: G.J.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 751 WDA 2021 |

Appeal from the Decree Entered May 13, 2021
In the Court of Common Pleas of Butler County
Orphans' Court at O.A. No. 43 of 2020

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:               **FILED: FEBRUARY 11, 2022**

B.P. (Father) appeals from the decree terminating his parental rights to his son, G.J.P. (Child), born January 2018.[1]  In addition, Father's counsel (Counsel) has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  Upon review, we grant the petition to withdraw and affirm the decree.

The orphans' court summarized the procedural history as follows:

On October 15, 2019, Butler County Children and Youth Services ("CYS" or "Petitioner") received a report stating Mother was extradited to North Carolina the night before on a warrant for a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, L.L. (Mother), died in June 2020.

drug charge. CYS Caseworkers found [C]hild with Father, who was homeless at that time.

CYS requested Father undergo a drug screen, but he refused. CYS has a significant history with Father relating to drug abuse. Father's parental rights were terminated to another child, M.P., on August 22, 2019 (Agency Exhibit #2).[2] Father has a substantial criminal history (Agency Exhibit #4). He is currently being prosecuted on a simple assault charge (Agency Exhibit #3).

[C]hild was taken into CYS custody on October 15, 2019. He was placed with Paternal Grandmother. Following a Shelter Care Hearing, the [c]ourt found it was not in the best interest of [C]hild to return to the custody of his parents.

Orphans' Court Opinion, 5/13/21, at 1-2.[3]

The court adjudicated Child dependent following a hearing on October 30, 2019, and approved a permanency plan for reunification during the dispositional hearing on November 18, 2019. *Id.* at 2. To progress toward reunification, Father was to "undergo a drug and alcohol assessment and follow recommendations, submit to drug screens a minimum of two (2) times

---

[2] M.P., Father's older son, resides with paternal grandmother. N.T., 3/26/21, at 44. Counsel states that paternal grandmother adopted M.P. *Anders* Brief at 11.

[3] CYS introduced eight exhibits into evidence, but they are not in the certified record. Although Father did not introduce the exhibits, it is his duty, as the appellant, to ensure "that the certified record contains all documents necessary for appellate review." *See In re O'Brien*, 898 A.2d 1075, 1082 (Pa. Super. 2006) (footnote omitted); *see also Smith v. Smith*, 637 A.2d 622, 624 (Pa. 1993) (citations omitted) (where appellant is remiss in fulfilling the duty to provide a record which is sufficient to permit meaningful appellate review, the appeal must be quashed). In this case, the exhibits are not in dispute and their omission does not impede our review.

per week, maintain stable housing, and maintain a legal source of income sufficient to meet [C]hild's needs." *Id.*

Thereafter,

Father agreed to engage in services with Family Pathways in November 2019. They provided supervised visitation, drug screening, and case management services. Father attended supervised visitation with [C]hild at Family Pathways from December 2019 through March 2020. The visits were scheduled once per week. Father attended most scheduled visits. In April 2020, the visitation became virtual due to COVID-19.

Father also engaged in visits with [C]hild supervised by Paternal Grandmother in March and April of 2020. Those visits ceased when Paternal Grandmother became concerned Father was under the influence of drugs.

Father completed a drug and alcohol evaluation at the Gaiser Center on December 12, 2019. The recommendations were to undergo drug withdrawal management and extensive outpatient treatment. Father attended a drug detoxification program on three (3) occasions. He attended inpatient therapy on one (1) occasion, but did not complete the program.

On February 3, 2020, a Permanency Review Hearing (PRH) was held. Father attended in person. The [c]ourt found no progress by Father toward alleviating the circumstances which necessitated the original placement, in that he continued to struggle with addiction. Father was granted supervised visits with [C]hild a minimum of twice per week.

On March 2, 2020, another PRH was held, which Father attended. The court found Father made no progress since the last PRH. Father continued to use illegal substances, had new drug charges pending, and presented no proof of housing or income.

At subsequent PRH's conducted in August and November of 2020, Father was incarcerated, but he attended by telephone. The [c]ourt found Father made no progress toward alleviating the circumstances which necessitated the original placement.

*Id.* at 2-3.

On November 9, 2020, CYS filed a motion for a finding of aggravated circumstances based on the termination of Father's parental rights to his older son, M.P. The court held a hearing on January 8, 2021, and thereafter granted the motion. Orphans' Court Opinion, 5/13/21, at 3. The aggravated circumstances order "relieved [CYS] of further efforts to reunify" Child and Father. *Id.* (citing Agency Exhibit#5).

On November 17, 2020, CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court conducted a hearing on March 26, 2021, at which guardian *ad litem* (GAL), Ronald N. Thomas, Esquire, represented the legal and best interests of Child, who was three years old at the time. CYS presented testimony from its caseworkers, Jonibeth Loveric and Jennifer Daniels-Wells, and Father's Butler County Adult Probation Officer, Matthew Duncan. Father, who was incarcerated and awaiting sentencing, also testified.

By decree entered on May 13, 2021, the orphans' court involuntarily terminated Father's parental rights. On June 15, 2021, Father timely filed a notice of appeal.[4] Counsel simultaneously filed a statement of intent to file an **Anders/Santiago** brief in lieu of filing a concise statement of errors

---

[4] Father's appeal is timely because he filed it on Tuesday, June 15, 2021; June 12, 2021, was a Saturday, and Monday, June 14, 2021, was Flag Day, a Butler County court holiday. **See** Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days of the entry of the order from which the appeal is taken); **see also** 1 Pa.C.S.A. § 1908 (weekends and legal holidays are not included in time computation).

complained of on appeal pursuant to Pa.R.A.P. 1925(c)(4). ***See In re J.T.***, 983 A.2d 771, 774 (Pa. Super. 2009) (holding that decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper). Counsel filed a petition to withdraw and ***Anders*** brief in this Court on September 27, 2021.

We begin by addressing the petition to withdraw and ***Anders*** brief. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting ***Commonwealth v. Smith***, 700 A.2d 1301, 1303 (Pa. Super. 1997)); ***see also In re V.E.***, 611 A.2d 1267 (Pa. Super. 1992) (extending ***Anders*** procedure to appeals from involuntary termination decrees).

To withdraw pursuant to ***Anders***, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). Counsel must also provide this Court with a copy of the letter advising appellant of his or her rights. ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Finally, the Pennsylvania Supreme Court has directed that **Anders** briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Here, Counsel filed a petition to withdraw and **Anders** brief stating that he reviewed the record and determined that Father's appeal is frivolous. Counsel failed to aver in his petition and attach to his **Anders** brief a letter to Father explaining his rights pursuant to **Millisock**, **supra**. This Court directed Counsel to serve the requisite letter upon Father and to file a copy of the letter in this Court. Counsel complied on October 21, 2021 by filing a copy of the letter dated October 15, 2021. Father has not responded to Counsel's petition to withdraw.

Counsel's **Anders** brief includes a summary of the procedural history and relevant facts; however, Counsel does not cite to the record. Counsel sets forth pertinent statutory and case law, as well as the findings of the orphans' court, in concluding the appeal is frivolous. **Anders** and **Santiago** contemplate citation to the record. **Santiago** further contemplates reference to anything of record that arguably supports the appeal. Nevertheless, **Anders** and **Santiago** require "substantial[], if not perfect[]," compliance.

- 6 -

*Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007). After careful review, we conclude Counsel's brief is substantially compliant with *Anders* and *Santiago*.

We next "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court if they are supported by the record. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citing *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). If the record supports the court's findings, we determine whether the court committed an error of law or abused its discretion. *Id.* An abuse of discretion does not occur merely because the record could support a different result. *Id.* (citing *In re Adoption of S.P.*, 47 A.3d at 827). We find an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id.* (quoting *In re Adoption of S.P.*, 47 A.3d at 826).

Pennsylvania's Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. §§ 2101-2938. It requires a bifurcated analysis, in which the orphans' court focuses initially on the parent's conduct pursuant to Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing *In re R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006)). If the court finds the party seeking termination has established grounds pursuant to

Section 2511(a), it then turns to Section 2511(b), which concerns the child's needs and welfare. *Id*. A critical element of Section 2511(b) is the discernment of whether the child has a bond with the parent, and what effect severing that bond may have on the child. *Id*. (citing *In re R.J.S.*, 901 A.2d at 508); *In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006). The party seeking termination bears the burden of proof under both Section 2511(a) and (b) by clear and convincing evidence. *In re C.P.*, 901 A.2d at 520 (citing *In re B.L.L.,* 787 A.2d 1007 (Pa. Super. 2001)).

Instantly, the orphans' court terminated Father's parental rights under Section 2511(a)(1), (2), (5), (8), and (b). We review the court's decision pursuant to Section 2511(a)(2) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

- 8 -

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2), (b).[5]

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence of: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) incapacity, abuse, neglect or refusal which caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. **See In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **In re A.L.D.** 797 A.2d 326, 340 (Pa. Super. 2002) (overruled on other grounds, **In the Interest of S.K.L.R.**, 256 A.3d 1108, 1124 (Pa. 2021)). A parent's vow to cooperate, after a long period of not cooperating, may be rejected as untimely or disingenuous. **Id.** Further, grounds for termination under Section 2511(a)(2) are not limited to affirmative

---

[5] This Court need only agree with any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm the termination of parental rights. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

misconduct; to the contrary, the grounds may include acts of refusal as well as incapacity to perform parental duties. *Id.* at 337.

In addressing a parent's incarceration in relation to Section 2511(a)(2), our Supreme Court held,

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2), where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence, and the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.

Here, the orphans' court concluded that Father's conduct warranted termination under Section 2511(a)(2) because Father "exhibits a consistent pattern of drug abuse and criminal recidivism. He demonstrates an inability to perform the necessary parental duties to support a child. Father is unable to perform parental duties while incarcerated for the indefinite future." Orphans' Court Opinion, 5/13/21, at 8. We discern no error.

CYS caseworker, Jonibeth Loveric, testified that when Child was placed in October 2019, CYS was aware of Father's "drug history, criminal history." N.T., 3/26/21, at 7. Another CYS caseworker, Jennifer Daniels-Wells, testified to being involved with the family since Child's placement. She testified that Father obtained a drug and alcohol assessment from the Gaiser Center on December 23, 2019, which recommended that Father obtain "detox" services. *Id.* at 18-19. Ms. Daniels-Wells stated that Father never provided documentation that he completed a detox program. *Id.* at 19. Further, Ms.

Daniels-Wells testified that Father only produced urine samples in December 2019, January, February, and March 2020, all of which were positive for "several different illegal drugs." *Id.* at 18.

Regarding Appellant's criminal history, counsel for CYS introduced into evidence Father's criminal dockets filed, in part, on June 24, 2020, July 8, 2020, August 27, 2020, September 4, 2020, November 2, 2020, April 17, 2018, October 18, 2017, and November 9, 2017. *Id.* at 20-22. Counsel offered the criminal dockets to show "a pattern of conduct where [Father] was on probation and violated that probation." *Id.* at 24.

Father's probation officer, Matthew Duncan, testified that Father was incarcerated in June of 2020 on a simple assault charge, and was on probation at the time of the charge. *Id.* at 11.

Addressing that time frame, Father stated he was "furloughed" to make funeral arrangements for Mother, who had died around the time he was incarcerated. *Id.* at 61-62. As best we discern, Father's furlough occurred in July 2020. *Id.* at 62. Father testified that when he returned to prison, he was disciplined for possessing "chewing tobacco," which is considered contraband. *Id.* at 61-62. Father explained, "I had to sit in the hole. I knew I was going to have to, too. Like, I lost it when I went out there. I was glad to come back." *Id.* at 62. Father stated that he has been drug-free since "the day I came back from my furlough, so July [2020]." *Id.* at 62. Father testified that upon his release from prison, he hoped to go to a halfway house.

*Id.* at 64. He explained, "I would like to be monitored, you know. I'm really trying to stay clean. . . . [W]henever they let me out, I still want to transition. I don't want to go just straight to the streets." *Id.* at 65. However, Father also testified that in addition to the simple assault charge, he had been charged forgery crimes which were outstanding at the time of the hearing. *Id.* at 60. Father stated his intention to plea to those charges. *Id.*

With regard to Father's reunification objectives, Ms. Daniels-Wells testified that Father "didn't complete anything on his [permanency] plan." *Id.* at 37. On cross-examination, Father's counsel asked Ms. Daniels-Wells "what else could [Father] have been doing from June 2020," to which she responded:

> My concern [is] what led him to be incarcerated in June. My concern is that he also didn't do anything prior to being incarcerated. And then my concern is that he was given that [furlough] in or around June or July of 2020.

*Id.* at 42.

The above evidence amply supports the court's conclusion that Father's repeated and continued incapacity due to his "consistent pattern of drug abuse and criminal recidivism," caused Child to be without essential parental care, control or subsistence necessary for Child's well-being, and Father "cannot or will not" remedy the conditions and causes of his incapacity, neglect, or refusal. Thus, the court did not err in finding grounds for termination under Section 2511(a)(2).

We next examine termination under Section 2511(b). As noted, Section 2511(b) focuses on a child's needs and welfare, including consideration of any

bond the child may have with the parent, and the effect of severing that bond. *L.M.*, 923 A.2d at 511. The court must determine whether the bond is necessary and beneficial, and whether severing the bond will cause the child emotional harm. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). However, the existence of a bond, while significant, is one of many factors a court should consider when addressing Section 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.,* 33 A.3d 95, 103 (Pa. Super. 2011)). Other factors include "the safety needs of the child, and … intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

In this case, the orphans' court found a bond between Father and Child, who was three years old at the time. The court stated it had

> observed Father and [C]hild interact in the courtroom prior to the hearing. It is clear Father and [C]hild share a bond. It is remarkable Father is able to maintain a bond with [Child] while incarcerated. Father takes advantage of regular video visits with [C]hild to ensure continued interaction.

Orphans' Court Opinion, 5/13/21, at 9.

Ms. Daniels-Wells confirmed Father's participation from prison in weekly video visits with Child, which are coordinated by Paternal Grandmother, who is Child's pre-adoptive resource. N.T., 3/26/21, at 25, 27. Child is also bonded with Paternal Grandmother, and doing well in her care. *Id.* at 27.

On this record, the court determined termination served Child's needs and welfare. To the extent Father and Child are bonded, the court concluded that the bond was outweighed by Father's inability to care for Child. Orphans' Court Opinion, 5/13/21, at 9. ***See In re Adoption of C.D.R.***, 111 A.3d 1212, 1220 (Pa. Super. 2015) (mother's bond with child was outweighed by her "repeated failure to remedy her parental incapacity," and by child's need for permanence and stability). The court also noted Father "will be able to maintain a bond" with Child, as adoption by Paternal Grandmother "presents an opportunity [for Father and Child] to maintain a relationship." Orphans' Court Opinion, 5/13/21, at 9. We discern no error.

In sum, our independent review confirms Father is not entitled to relief, and the record does contain any non-frivolous issues overlooked by Father's counsel. We therefore grant Counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/11/2022

- 14 -